UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM JORGENSEN,

       Plaintiff,

v.

ROBERT HUMPHREYS, JAY ALDANA,
JOHN/JANE DOE, MELISSA KARPINSKI,
and MARK HEISE,

       Defendants.

Case No. 12-CV-1054-JPS

ORDER

1. BACKGROUND

Plaintiff William Jorgensen ("Jorgensen"), proceeding through counsel, brings this action under 42 U.S.C. § 1983 alleging that debilitating physical injuries he suffered when battered by a fellow inmate—Terrance Jackson ("Jackson")---in a Wisconsin state prison on January 22, 2007, amount to cruel and unusual punishment in violation of the Eight Amendment to the U.S. Constitution because correctional officials and officers were deliberately indifferent to the substantial risk of serious harm Jackson posed to his fellow inmates. (Docket #1-2). To this end, Jorgensen names as defendants a number of identified and unidentified employees of the State of Wisconsin's Department of Corrections (including employees of the Racine Correctional Institution ("RCI") located in Sturtevant, Wisconsin, where Jorgensen was incarcerated at the time of the attack). (Docket #1-2).[1]

---

[1] The unidentified employee – John/Jane Doe – is intended by Jorgensen to represent whomever was "in charge of inmate protection and/or security" at RCI during the relevant period of time. (Docket #1-2, ¶3).

Defendants move for summary judgment (Docket #19) and Plaintiff opposes (Docket #31).

2. FACTS

The following facts are undisputed among the parties.[2]

On January 22, 2007, Jorgensen was injured severely in an altercation with Jackson while both were inmates at RCI (a medium security facility). Prior to that date: (i) Jorgensen and Jackson had never had any altercation

---

[2] Civil Local Rule 56(b)(2) requires each party opposing a motion for summary judgment to file within 30 days of service of the moving party's papers, *inter alia*:

> "a concise response to the moving party's statement of facts that *must* contain: (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to affidavits, declarations, parts of the record, and other supporting materials relied upon, and (ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph…" (emphasis added).

Plaintiff's opposing papers utterly fail to comply with these requirements. *See* (Docket #s 31-35). Moreover, Plaintiff's response brief and proposed facts largely mirror one another verbatim (replete with citations to caselaw and legal conclusions). *Compare* (Docket #s 34 and 35).

Civ. L. R. 56(b)(4) warns clearly that "[t]he Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."

Notwithstanding Plaintiff's counsel's utter failure to conform his opposing papers to the strictures prescribed by the local rules as detailed above, the Court has reviewed carefully all of the opposing papers to ascertain to what extent, if any, Defendants' proposed facts are placed genuinely in dispute by evidenced cited by Plaintiff. The facts in this section are tailored accordingly.

with, or laid their hands on, each other (Docket #21, ¶ 106) (Docket #29-1, transcript page 27, lines 8 through 18); and (ii) "Jackson's conduct record was not uncommon for an inmate in a medium custody setting." (Docket #21, ¶ 60) (Docket #22, ¶ 15).

3. APPLICABLE LAW

    3.1    FAILURE-TO-PROTECT STANDARD

To prevail on a failure-to-protect claim under the Eighth Amendment, a plaintiff must show that: "(1) 'he [was] incarcerated under conditions posing a substantial risk of serious harm,' and (2) defendant-officials acted with 'deliberate indifference' to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).[3]

To satisfy the first prong, "a plaintiff must [show] not only that he or she experienced…a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Id.* at 910. In general, substantial risks are "'risks so great that they are almost certain to materialize if nothing is done.'" *Id.* at 911 (quoting *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)). This general standard covers, *inter alia*, "risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.'" *Id.*

---

[3] The record does not appear to clarify whether Jorgensen was a pretrial detainee or convicted prisoner at the time of the attack. No matter: the Seventh Circuit analyzes failure-to-protect claims of both pretrial detainees and convicted prisoners "under *Farmer's* two-prong test." *Budz*, 398 F.3d at 910.

Page 3 of 7

Case 2:12-cv-01054-JPS   Filed 08/12/13   Page 3 of 7   Document 43

To satisfy the second prong, a plaintiff must show "'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).

### 3.2 SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

To be clear, "[w]hen a plaintiff…fails to produce evidence to defeat summary judgment, a defendant moving for summary judgment need not 'support its motion with affidavits or other similar materials *negating* the opponents claim.'" *Shields v. Dart*, 664 F.3d 178, 182 (7th Cir. 2011) (quoting Celotex *Corp. V. Catrett*, 477 U.S. 317, 323 (1986)); *see generally, Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) ("The burden of production and the risk of non-persuasion rest with the plaintiff in civil litigation.").

4. DISCUSSION

Defendants point to the paucity of evidence cited by Plaintiff to substantiate his claim and argue that it fails to place any material fact in genuine dispute. (Docket #38, 3).

Plaintiff theorizes that Jackson's disciplinary history prior to his battery of Jorgensen on January 22, 2007, rendered Jackson wholly unsuitable for confinement in a mere *medium* security prison such as RCI. (Docket #34, 8). This failure of classification, Plaintiff argues, should have been sufficiently obvious to Defendants—variously, at the time of the attack, the Warden of RCI, the Administrative Captain at RCI, an Offender Classification Specialist at RCI and the Director of the Bureau of Offender Classification and Movement at the Wisconsin Department of Corrections (Docket #21, ¶¶ 4-10)—as to permit the inference that Defendants were deliberately indifferent to a substantial risk of serious harm Jackson posed to his fellow inmates. *Id.* To substantiate his theory, Plaintiff grandly summarizes Jackson's cryptic disciplinary history[4] as evidencing that "Jackson not only was disruptive, but engaged in fights and disorderly behavior while at the institution as well as threatening behavior and was cited multiple times"

---

[4] The disciplinary history, as submitted to the Court, comprises: (i) a handwritten scorecard tallying infractions with what appear to be cryptic references to the Wisconsin Department of Corrections' regulations (Docket #33-1, 15-16); and (ii) a number of handwritten administrative reports relating to these infractions (*Id.* at 20-30).

(Docket #34, 10).[5] Critically, Plaintiff fails to dispute Defendants' contention that Jackson's conduct record was not uncommon for an inmate in a medium custody setting. (Docket #21, ¶ 60); (Docket #22, ¶ 15). That failure becomes dispositive of Plaintiff's claim because "'[i]t is certainly true that a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in [a detention facility].'" *Budz*, 398 F.3d at 913 (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)).[6]

With the benefit of the foregoing analysis, the Court is obliged to find that: (i) Plaintiff has failed to carry his burden of production in response to Defendants' motion for summary judgment because no reasonable jury could find in favor of Plaintiff on either (let alone both) of the prongs in the *Farmer* test based on the scant evidence Plaintiff has brought to the Court's attention; and (ii) Defendants are entitled to judgment as a matter of law.[7]

---

[5] Notably, Plaintiff's use of "fights" in the plural necessarily includes the attack at issue in this case because "[t]he only other major conduct report received [by prison authorities] that involved [a]n offense against bodily security was for fighting on April 10, 2000, for which [Jackson] received 3 days adjustment segregation." (Docket #16, ¶ 87); (Docket #25, ¶ 23).

[6] Grasping at straws, Plaintiff asks the Court to find that a reasonable jury could infer both prongs of the *Farmer* test from: (i) affidavits of RCI inmates who aver that Jackson was, in their view, a bully and "known as a Big Bully" (Docket #33-1, 47-48); and/or (ii) Jorgensen's affidavit stating that he did not start the fight (Docket #32). The former is plainly insufficient to create a genuine dispute and the latter is plainly inapposite to the legal standards governing Jorgensen's claim.

[7] Plaintiff's counsel, in a further breach of protocol, styled his opposing papers as a "Motion to Deny Summary Judgment" (filed on July 17, 2013). (Docket #31). Dispositive motions in this case were due on June 20, 2013. (Docket #11). So, while Plaintiff's opposing papers were timely with regard to opposing Defendants' motion for summary judgment, they were untimely as a stand-alone motion. With the benefit of the foregoing analysis, Plaintiff's self-styled "motion" will be denied as moot.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Docket #19) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Deny Summary Judgment (Docket #31) be and the same is hereby DENIED as moot.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2013.

BY THE COURT:

*[signature]*

J.P. Stadtmueller
U.S. District Judge